**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONNA J. DeCARO, | ) | CASE NO. 1:20-cv-01516 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Donna J. DeCaro (Plaintiff), challenges the final decision of Defendant Kilolo

Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her application for

Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§

416(i), 423, 1381 *et seq.* (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For

the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. Procedural History**

On August 8, 2017, Plaintiff filed her application for DIB, alleging a disability onset date of

October 7, 2016. (R. 16, Transcript (Tr.) 178-188). The application was denied initially and upon

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a
party." Fed.R.Civ.P. 25(d).

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 107-123). Plaintiff participated in the hearing on June 11, 2019, was represented by counsel, and testified. (Tr. 29-73). A vocational expert (VE) also participated and testified. *Id*. On July 11, 2019, the ALJ found Plaintiff not disabled. (Tr. 24). The Appeals Council denied Plaintiff's request to review the ALJ's decision on May 15, 2020, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 17, 18 & 19).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly evaluate the evidence documenting the limited use of her upper extremities; (2) the ALJ erred by finding Plaintiff's testimony was not fully credible; and, (3) the Step Four finding was not supported by substantial evidence. (R. 17).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1.  Treatment Records

On September 9, 2016, a nerve conduction study of the right median motor response was "abnormal with normal distal latency." (Tr. 306). EMG studies yielded an impression of active and chronic denervation and reinnervation in both upper extremities. (Tr. 307).

On January 9, 2017, Plaintiff saw neurologist Christopher Uchiyama, M.D., about five weeks after neck surgery. (Tr. 334). Plaintiff stated that she was "not having much in the way of neck symptoms," but she reported continued pain and weakness in her upper extremities, worse

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

on the right. *Id*. She was not taking any pain medication. *Id*. Dr. Uchiyama reviewed x-rays indicating stable placement of surgical hardware, and he indicated that her lack of relief may be the result of permanent damage to her nerves prior to surgery. (Tr. 334).

On March 29, 2017, Dr. Uchiyama noted that Plaintiff continued to report hand weakness and pain of uncertain etiology. (Tr. 337).

On August 30, 2017, Plaintiff was seen for her annual exam by Isabel Kuo Cheon, M.D. (Tr. 340). Plaintiff reported she began exercising one month earlier six times a week for a duration of one hour each. *Id*. She had an elliptical, treadmill, and stationary bike at home. *Id*. Plaintiff was taking Tramadol, a pain medication, and Diazepam for spasms. *Id*. Physical examination was unremarkable. (Tr. 341-42).

On September 22, 2017, Plaintiff saw Dr. Uchiyama and reported ongoing cervical thoracic pain and "transient lightheadedness exacerbated by neck flexion or extension." (Tr. 374). She complained of low back pain "but not much radicular symptoms." *Id*. He reviewed new x-rays of Plaintiff's spine and noted interval worsening since her x-rays from 2012. (Tr. 376).

On October 16, 2017, Plaintiff's chief complaint was pain in her cervical spine and lower back. (Tr. 384). She had a history of complaints regarding right arm pain and right hand cramping. *Id*. Treatment notes indicate Plaintiff previously had multiple cervical spine surgeries. *Id*. Plaintiff reported she can sit for thirty minutes, stand ten minutes, and walk fifty yards before he feet hurt. (Tr. 385).

On August 24, 2018, Plaintiff visited the emergency room (ER) for a head injury and, on physical examination she had normal range of motion in her neck, normal musculoskeletal range of motion, and no edema. She had tenderness in her cervical back. (Tr. 490, 493-94).

On October 29, 2018, Plaintiff established care with Paul Shin, M.D., a pain management

specialist, and complained of long-standing lower back pain and lower extremity pain that was worsening. (Tr. 517). She reported pain was exacerbated by standing, walking, and flexion, and relieved by sitting. *Id*. She complained that this pain interfered with getting out of bed or a chair and performance of household chores. *Id*. On examination, Plaintiff had limited range of motion in her neck and back, abnormal posture and spinal curves, moderate pain to palpation, negative straight leg raise test bilaterally, 5/5 motor strength and tone, and an antalgic gait. (Tr. 520). Plaintiff was prescribed Lorazepam and counseled on the importance of exercise. (Tr. 521).

On December 10, 2018, Plaintiff saw Dawn Boyle, CNP, at Dr. Shin's office for a follow-up and reported persistent pain at a present level of four on a ten-point scale. (Tr. 535). She reported the pain radiates down her leg, arm, abdomen, and back, causing weakness, numbness, and tingling. *Id*. She reported that pain interfered with shopping and household cleaning, and that nothing mitigated her pain. *Id*. On physical examination, Plaintiff had no neck tenderness or pain on range of motion, intact range of motion of the back with pain, tenderness on palpation of the lumbar spine and global tenderness throughout the thoracic lumbar region, an antalgic gait, no loss of sensation, and full strength in all four extremities. (Tr. 536). Transforaminal epidural steroid injection (ESI) for the lumbar spine was ordered and nurse Boyle recommended regular exercise at home, including walking 20 minutes daily. (Tr. 537).

On March 20, 2019, Plaintiff saw Andrea Vastola, NP, who noted Plaintiff was "well-known to our clinic, having last seen Dr. Christopher Uchiyama in September 2017." (Tr. 442). Plaintiff reported intermittent, diffuse, and poorly differentiated neck pain and cramping in her fingers that was several years in duration. *Id*. Plaintiff reported her main concern was back pain, which radiated down to her knee. Plaintiff rated the severity of her pain as moderate and tolerable, but as interfering with her usual recreational activities and some restrictions in daily

4

activities. (Tr. 442). On physical exam, Plaintiff had a slowed gait that was balanced and non-antalgic; in her back there was no atrophy or pain on palpation; pain with flexion and extension of the lumbar spine; and tandem walk was impaired due to balance issues. (Tr. 445). Examination of the hands was not expressly noted. (Tr. 442-447). Nurse Vastola attributed Plaintiff's reported finger cramps to chronic cervical myelopathy. (Tr. 446).

### 2. Opinions Concerning Plaintiff's Functional Limitations

On October 16, 2017, Mark Vogelgesang, M.D., performed a consultative examination. (Tr. 384-92). Plaintiff complained of right arm pain, right hand cramping, difficulty moving her right hand, difficulty lifting with the right arm, and occasional numbness. (Tr. 384-85). She reported her cervical spine pain was a 7 to 8 on a ten-point scale and radiates into the right arm. (Tr. 385). She could lift/carry ten pounds. *Id*. On physical examination, Dr. Vogelgesang observed that Plaintiff had no tenderness on palpation of the spine, but marked limitation in range of motion (ROM) in her neck; a negative straight leg raise test bilaterally; good ROM of all joints with 5+ strength except for both hands; normal grasp, manipulation, pinch and fine coordination "but it was somewhat weak on both sides;" no signs of muscle spasm, spasticity or muscle atrophy; a normal gait; and, normal reflexes and sensation in all extremities "with the exception of decreased sensation on the right fourth digit on the palm side." (Tr. 386-87). Dr. Vogelgesang observed that "[d]ynamometric testing shows that her hands are symmetrically weak. Difficult to ascertain if she put full effort into it." (Tr. 387). Dr. Vogelgesang concluded that Plaintiff had significantly reduced neck mobility, mild neuropathy in the right fourth digit, and that low back pain did not appear to impact Plaintiff's mobility. *Id*. He indicated that Plaintiff may be able to do sedentary-to-light work, lifting less than 10 pounds, and should "avoid repetitive actions with both hands to avoid cramping." *Id*.

On November 24, 2017, State Agency physician Venkatachala Sreenivas, M.D., reviewed the evidence of record and opined that Plaintiff's impairments did not meet or equal the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 1.02 and 1.04. (Tr. 85-86). Dr. Sreenivas opined that Plaintiff could perform light exertional work, had a number of postural limitations, and was limited to frequent gross and fine manipulation with the right hand due to right upper extremity radiculopathy and obesity. (Tr. 88). She was also prohibited from all exposure to hazards. *Id.*

On January 16, 2018, State Agency physician Linda Hall, M.D., reviewed the evidence and concurred with Dr. Sreenivas's assessment, although she found slightly greater postural limitations. (Tr. 97, 99-100).

On January 29, 2019, Plaintiff was seen by physical therapist Amanda Everden for the purpose of assisting a physician in making recommendations regarding Plaintiff's application for disability at the request of Dawn Boyle, CNP and Dr. Shin. (Tr. 401, 404). Ms. Everden noted that "[c]onsistency of effort results obtained during testing indicate significant observational and evidence based inconsistencies resulting in self-limiting behavior and submaximal effort," though pain could have factored into such behavior. (Tr. 403). Ms. Everden indicated Plaintiff frequently could reach above her shoulder, and only occasionally perform simple grasping, firm grasping, pinching, fine coordination, and gross coordination. (Tr. 404). She also indicated Plaintiff was limited to work at the sedentary level of exertion with the need to alternate between sitting and standing. (Tr. 403). No explanation was given for the assessed limitations. *Id.*

On March 25, 2019, nurse practitioner Vastola completed a checklist-style questionnaire indicating she last saw Plaintiff five days earlier. (Tr. 406-07). She indicated Plaintiff had diagnoses of stenosis of cervical spine with myelopathy and lumbar radiculopathy. (Tr. 406).

Nurse Vastola checked boxes indicating Plaintiff could sit, stand, and walk less than 2.5 hours each during the day; lift/carry five pounds or less; could each, grasp, and perform fine manipulation less than 2.5 hours each during the day; and, could never balance, stoop, kneel, crouch, or crawl. (Tr. 406-07). No explanation was provided for the limitations assessed. *Id*.

### B. Relevant Hearing Testimony

At the June 11, 2019 hearing, Plaintiff testified as follows:

- She lives alone, and her brother helps her maintain her house. (Tr. 37-38).

- She drives an automobile locally. (Tr. 39).

- She could not perform her past work because her fingers would "cramp" and "lock," which was "very painful. (Tr. 53). Using the mouse also caused pain in the palm of her hand. (Tr. 54).

- She also experienced pain, aching, and numbness in her arms and wrists. (Tr. 54).

- She has difficulty sleeping due to back and leg pain. (Tr. 57).

- She watches television and reads. She can no longer needlepoint. (Tr. 58).

- She was planning to try pool therapy in a few weeks. (Tr. 59).

- She does not take pain medication, as it made her dizzy and nauseous. (Tr. 61).

- She received steroid injections in her back, which did not help her. (Tr. 62).

- When she grocery shops, a family member will take her and help her shop. (Tr. 60).

- She does not cook much aside from "TV dinners" and sandwiches. (Tr. 68).

Based on Plaintiff's description of her past work given during the hearing, the VE testified that Plaintiff's most recent past work was classified as a computer systems hardware analyst, Dictionary of Occupational Titles (DOT) 033.167-010, which was sedentary, skilled with an SVP of 7. (Tr. 50). The VE testified that the job of a computer operator, DOT 213.362-010, was

more consistent with Plaintiff's job duties prior to her work as a computer systems hardware

analyst. (Tr. 51). Both jobs required frequent handling, reaching, and fingering. (Tr. 51-52).

Plaintiff performed her work at the sedentary level. (Tr. 52).

During the administrative hearing, the ALJ posed the following hypothetical question to the

VE:

> [F]or each hypothetical that I give you, please assume we have an individual of
> the claimant's age and education and the past jobs that you described…. And then
> further assume the individual is limited as follows.
>
> So for my first hypothetical, the individual could occasionally lift and/or
> carry, picking up or pulling 20 pounds frequently; lift and/or carry, picking up or
> pulling 10 pounds. The individual could stand and/or walk with normal breaks for
> a total of about six hours in an eight-hour workday; sit with normal breaks for
> about six hours in an eight-hour workday. Pushing and pulling are limited in the
> right upper extremities to frequent pushing and pulling in the right upper
> extremity only. Otherwise, pushing and pulling are limited as is consistent with
> lifting or carrying. The individual could frequently climb ramps and stairs;
> frequently crouch; occasionally stoop; occasionally kneel. I have no limits in
> balance. Could never climb ladders, ropes, and scaffolds. The individual is limited
> to frequent handling and fingering with the right upper extremity. The individual
> should avoid unprotected heights, commercial driving, heavy machinery. And I
> have no visual or communicative limitations.

(Tr. 62-63).

The VE testified that such an individual could not perform Plaintiff's past relevant work as

performed, which was exclusively sitting, but could perform the work as typically performed.

(Tr. 63-64). In response to a question from the ALJ, the VE testified that when it comes to hand

manipulation, the DOT references only terms such as frequent, occasional, or constant and does

not "deal with repetitive action." (Tr. 64). In his opinion, the VE testified that "when a person is

performing repetitive activities, that is more than frequent. It might not be at a constant level,

because at constant it means virtually 90 percent of the time, maybe even 95 percent of the time.

But it's certainly more than two-thirds of the day." (Tr. 64).

The ALJ posed a second hypothetical limiting the individual to the sedentary exertional level with all other limitations from the first hypothetical unchanged. (Tr. 65-66). The VE testified that such an individual could perform the past work as typically performed. (Tr. 66).

In response to further questions of the ALJ, the VE testified that a limitation to only occasional handling and fingering of either or both upper extremities would eliminate Plaintiff's past relevant work as typically performed. (Tr. 68-69).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments)

that is expected to last for at least twelve months, and the impairment(s) meets a listed

impairment, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent her from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2019.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 7, 2016 through her date last insured of June 30, 2019 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: obesity; and multi-level degenerative disc disease, with radiculopathy, status-post cervical discectomy and fusion, and lumbar laminectomy (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She can frequently crouch; occasionally stoop, kneel; and frequently push and/or pull with her right upper extremity. She is limited to frequent handling and fingering with her right upper extremity, and must avoid unprotected heights, commercial driving, and heavy machinery.

6. Through the date last insured, the claimant was capable of performing past relevant work as a computer systems hardware analyst (DOT# 033.167-010, sedentary exertion, skilled, SVP 7). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 7, 2016, the alleged onset date, through June 30, 2019, the date last insured (20 CFR 404.1520(f)).

(Tr. 17, 19, 23-24).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned

even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.   Plaintiff's Assignments of Error**

   **1. First Assignment of Error**

   Plaintiff's first assignment of error raises two distinct issues, which are addressed separately below.

   **a. Listing 1.04**[3]

   Plaintiff takes issue with the ALJ's finding that she did not meet or medically equal Listing 1.04. However, Plaintiff's brief lacks a coherent argument asserting how the ALJ's finding resulted in reversible error—beyond claiming that a reweighing of the evidence could have resulted in a different outcome. (R. 17, PageID# 1241-1244).

   At the third step in the disability evaluation process, the Social Security Administration considers a claimant disabled if her impairment(s) "meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement." *See* 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments sets forth those impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a). Therefore, an individual who meets the requirements of a Listed Impairment in conjunction with

---

[3]  On May 7, 2018, the Social Security Administration proposed new revisions to the Listings addressing the musculoskeletal body system. *Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 83 FR 20646-01, 2018 WL 2086894 (May 7, 2018). The final revisions to the Listings became "effective on April 2, 2021…. The current rules will continue to apply until the effective date of these final rules. When the final rules become effective, we will apply them to *new applications filed on or after the effective date of the rules*, and to claims that are pending on or after the effective date." *Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 FR 78164, 78164, 2020 WL 7056412 (Dec. 3, 2020). Therefore, the court applies the requirements of Listing 1.04, as it was in effect on the date the application was filed as well as on the date the ALJ rendered the decision.

the durational requirement is deemed conclusively disabled.

Each individual listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). It is Plaintiff's burden to "show that his condition meets or equals one of the listed impairments." *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). A claimant must satisfy *all* of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1525(c)(3)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant is also disabled if his impairment is the medical equivalent of a listing, 20 C.F.R. § 404.1525(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

The ALJ should discuss a relevant listing "where the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 432 (6th Cir. 2014) (*citing Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). Although an ALJ errs when no reasons are provided to support a finding that a specific listing was not met where the claimant had put forward sufficient evidence to meet the listing, *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414-15 (6th Cir. 2011), such error is subject to harmless error analysis where the claimant "has not shown that his impairments met or medically equaled in severity any listed impairment." *Forrest v. Comm'r of Soc. Sec.*, 591 Fed. App'x 359, 366 (6th Cir. 2014).

The relevant Listing's requirements are as follows:

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc diseases, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or

the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.][4]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 1.04. The Commissioner asserts that while the ALJ

acknowledged the requisite showing of nerve root compression, substantial evidence supports

that the Plaintiff did not meet or equal the remainder of Listing 1.04(A). (R. 18, PageID# 1269-

70). The ALJ addressed the disputed listing as follows:

No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. In reaching the conclusion that the claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment, the undersigned also considered the opinion of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion (20 CFR 404.1527(1), 416.927(1) and Social Security Ruling 17-2p). The undersigned has specifically considered the claimant's multiple spinal impairments under Listing 1.04, Disorders of the spine.

Although the records of evidence do contain evidence of nerve root compression, the required symptoms of limitation of motion of the spine, motor loss, atrophy, and positive straight leg raise tests are not present. Spinal arachnoiditis is likewise not indicated by appropriate operative note or pathological report. Lastly, the claimant retains the ability to ambulate effectively, as defined by the Regulations. While the claimant's multiple spinal impairments have a significant limiting effect on her functional capacity, they do not meet or medically equal Listing 1.04.

(Tr. 19).

The ALJ's statement on Listing 1.04(A), while brief, is a sufficient concise statement

supported by substantial evidence. Plaintiff points to evidence in the record, but without any

_____

[4] As the Commissioner points out, Plaintiff does not specify whether she believes she met the listing requirements of 1.04(A), (B), or (C), though her argument only directly implicates 1.04(A). (R. 17, PageID# 1244).

meaningful analysis, then concludes that the record demonstrated "limitation of motion of both cervical and lumbar spines, motor loss in both her upper and lower extremities, and atrophy in her neck." (R. 17, PageID# 1244). Plaintiff's brief fails to discuss whether the Listing's requisite accompanied sensory or reflex loss was present or whether positive straight-leg raise tests were present. *Id*.

Plaintiff also does not discuss whether all the requisite factors were present for *at least 12 consecutive months*. Moreover, even if the evidence cited by Plaintiff was capable of supporting a finding that the Listing was satisfied, the Commissioner is correct that Plaintiff has not demonstrated that the evidence was so one-sided that the ALJ could not have found differently with respect to Listing 1.04(A). *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) ("Our role is not to resolve conflicting evidence in the record…"). Many treatment notes, cited in the recitation of the medical evidence above, showed normal range of motion, no atrophy, and negative straight leg raise tests—all evidence capable of supporting a finding that *all requirements* of Listing 1.04(A) were *not* satisfied. As stated above, a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

The court finds that the ALJ provided sufficient articulation of the decision's findings on Listing 1.04(A). Even if the ALJ's explanation could have been more thorough, the Sixth Circuit has held that a matter should not be remanded where the plaintiff cannot establish that "a ruling was anything but harmless error," noting the futility of "sending the case back to the ALJ" where it would not "serve any useful purpose …." *Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (*quoting NLRB v.*

*Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)); *see also*

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (same). "No principle of

administrative law or common sense requires us to remand a case in quest of a perfect opinion

unless there is reason to believe that remand might lead to a different result." *Fisher v. Bowen*,

869 F.2d 1055, 1057 (7th Cir. 1989); *accord Mabrey v. Comm'r of Soc. Sec.*, 1:13-cv-555, 2015

WL 556435 at *5 (S.D. Ohio Feb. 10, 2015), *adopted by* 2015 WL 1412205 (Mar. 26, 2015).

### b. Weight Ascribed to Various Medical Sources

The first assignment of error also appears to argue a violation of 20 C.F.R. § 404.1520c,

which addresses how medical opinions are assessed for claims filed after Match 27, 2017. (R. 17,

PageID# 1245). Under the new regulations, an ALJ is required to articulate how she considered

the factors of "supportability" and "consistency," which are the two "most important factors" in

determining the persuasiveness of a medical source's medical opinion or a prior administrative

medical finding. 20 C.F.R. § 404.1520c(b) & (c).

First, Plaintiff takes issue with the ALJ's decision finding Dr. Vogelgesang's consultative

opinion unpersuasive regarding the Plaintiff's manipulation abilities. (R. 17, PageID# 1246). The

decision explained as follows:

> The claimant participated in a consultative medical examination with Dr. Mark
> Vogelgesang, MD in October 2017. (Ex. 3F) His opinion after that examination
> was that the claimant "may be able to tolerate light to sedentary work of lifting
> less than 10 pounds. She would have to avoid repetitive actions with both hands
> to avoid cramping. She would have to avoid any job that requires moving her
> head repetitively." Dr. Vogelgesang's opinion was not persuasive, because
> he used the ambiguous term "repetitively," rather than specifying whether he
> meant "frequently," or "occasionally," as defined by the Regulations.
> Furthermore, his opinion appears to limit the claimant based on her subjective
> report of hand "cramping," whereas his objective medical testing indicated
> normal grasp, manipulation, pinch, and fine coordination abilities in the
> claimant's bilateral hands. (Ex. 3F/6) Subsequent records do not support a
> limitation to a job which limits repetitive movement of the head, or of the

> claimant's hands. In spite of the claimant's subjective reports of hand cramping,
> weakness, or loss of sensation, there is no objective medical evidence that that
> [sic] claimant's moderate loss of sensation worsened.

(Tr. 22). The ALJ's determination—that Dr. Vogelgesang's prohibition against repetitive use of the hands is ambiguous—is supported by the VE's testimony, as the term "repetitive" is not vocationally relevant, because the DOT uses only terms such as frequent, occasional, or constant and does not "deal with repetitive action." (Tr. 64). Furthermore, the VE opined that "when a person is performing repetitive activities, that is more than frequent. It might not be at a constant level, because at constant it means virtually 90 percent of the time, maybe even 95 percent of the time. But it's certainly more than two-thirds of the day." *Id*. Therefore, even if the ALJ had accepted the prohibition against repetitive use of the hands, such a finding was not inconsistent with the ALJ's residual functional capacity (RFC) determination that Plaintiff could frequently (but not constantly) perform gross and fine manipulation. (Tr. 19). Plaintiff's subjective opinion that a prohibition against repetitive use of the hands was akin to no more than occasional use of her hands simply has no support in the record. In addition, Plaintiff's brief does not identify any shortcoming with respect to the ALJ's compliance with 20 C.F.R. § 404.1520c, as she does not suggest the decision did not adequately address the "supportability" and "consistency" factors.

Plaintiff next takes issue with the ALJ's discussion of the opinion of physical therapist Everden that Plaintiff was limited to work at the sedentary level of exertion with the need to alternate between sitting and standing, along with an ability to only occasionally grasp and perform fine coordination. (R. 17, PageID# 1246). Plaintiff contends "[n]o coherent explanation was provided over and above the fact that the ALJ believed DeCaro could use her upper extremities frequently rather than occasionally." *Id*. Here, the ALJ's decision explained as follows:

Physical therapist Amanda Everden submitted a residual functional capacity assessment in January 2019 indicating her opinion that the claimant is capable of performing sedentary work on a full-time basis, but that she needs to alternative sitting and standing; cannot stand for more than 1 hour and 45 minutes or sit for 2 hours at a time; can lift 10 pounds to waist or shoulder height; can occasionally, balance, crawl, perform "fine coordination, firm grasping, gross coordination, sustained kneeling, pinching, simple grasping, squatting, stair climbing, and walking;" frequently reach above her shoulder, dynamically balance, and forward reach; but must avoid bending and repetitive kneeling. (Ex. 6F/3-4) Although this opinion is partially consistent with the records of evidence, "inconsistent" effort is indicated, and her opinion is not persuasive. (Ex. 6F/4) Furthermore, thorough review of the records of evidence yields only subjective reports of fine coordination and/or grasping or manipulative limitations, and the objective evidence is indicative of a limitation to frequent performance of such tasks.

(Tr. 22-23). Plaintiff's assertion that "no coherent explanation" was provided for finding the opinion not fully persuasive is untenable on its face. The ALJ noted that Ms. Everden's opinion was not supported by her own observation that Plaintiff gave inconsistent or submaximal effort. In addition, the ALJ noted that the opinion was inconsistent with other evidence of record. Plaintiff's brief does explain why this analysis fails to comply with the "supportability" and "consistency" factors.

Finally, Plaintiff takes issue with the explanation provided for the persuasiveness of nurse practitioner Vastola's opinion. (R. 17, PageID# 1246-47). Again Plaintiff alleges the ALJ's decision lacks a "coherent explanation." *Id*. The decision explained as follows:

Nurse practitioner, Andrea Vastola, NP also provided an opinion related to the claimant's functional capacity in March 2019. (Ex. 7F) Her opinion is that the claimant can lift or carry less than 5 pounds; never climb stairs or ladders; never balance, stoop, kneel, crouch, or crawl; occasionally sit, stand, walk, reach in all directions, perform fine manipulation, simple or firm grasp, and use her lower extremities for foot controls. (Ex. 7F/1-2) After a thorough review of the records of evidence, this opinion is not persuasive, because the record does not contain any objective medical finding which supports limiting the claimant to only occasional fine manipulation or grasping. This medical source statement is based on a one-time examination of the claimant in March 2019, when Ms. Vastola last saw the claimant in September 2017. Furthermore, that singular examination indicates that claimant's "main concern however has been the development of her

> back pain which she feels represents about 95% of her overall daily
> pain." (Ex. 8F/35) There is no indication of any examination of the claimant's
> upper extremities on that date, which suggests that Ms. Vastola's opinion limiting
> the claimant to only occasional manipulation and grasping is based primarily or
> entirely upon the claimant's subjective complaint, rather than on any objective
> medical test. (Ex. 8F/35-38)

(Tr. 23). Again, Plaintiff's assertion that "no coherent explanation" was provided is untenable.

First, the "Relationship with the claimant" is a factor that an ALJ may appropriately consider 20

C.F.R. § 404.1520c(3). Plaintiff has not challenged the accuracy of the assertion that nurse

Vastola rendered the opinion after a one-time examination of the claimant that occurred about a

year and a half after Plaintiff was last seen at Dr. Uchiyama's office where nurse Vastola

worked. Nurse Vastola's notes even acknowledge Plaintiff had not been seen by their office

since September of 2017. (Tr. 442).

Plaintiff also has not challenged the ALJ's assertion that nurse Vastola did *not examine

Plaintiff's hands or arms* during the March 20, 2019 visit that formed the basis of nurse's

opinions. Indeed, the court's own review of the medical record in question confirms that no

mention is made of an upper extremity examination despite the performance of a physical

examination.[5]  (Tr. 444-445). The regulations define supportability as "[t]he more relevant the

objective medical evidence and supporting explanations *presented by a medical source* are to

support his or her medical opinion(s) … the more persuasive the medical opinions or prior

administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(1) (emphasis added). Plainly,

the ALJ found nurse Vastola's opinion was not supported because she presented no evidence or

---

[5] The physical examination of Plaintiff's extremities discusses only her lower extremities: "The
patient is able to heel Walk and Toe Walk. Tandem walk is impaired secondary to balance
problems. The bilateral iliopsoas [which connect the spine to the lower limbs] are 4 out of 5 with
pain limitation, and bilateral quadriceps [thigh muscles] 5 out of 5." (Tr. 445).

explanation supporting her opinion as it related to Plaintiff's alleged manipulative limitations.

Finally, consistency is defined as "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(2). The ALJ found the opinions of two State Agency physicians, Drs. Sreenivas and Hall, partially persuasive, and incorporated their opinion that Plaintiff could perform frequent manipulation into the RFC. (Tr. 19, 22, 88, 99-100). The ALJ could properly consider the inconsistency of the medical source opinions with the opinions set forth by the State Agency physicians.

In her reply, Plaintiff argued that the State Agency opinions should not have been found persuasive because they were completed in November 2017 and January 2018—"prior to the submission of the documentation from the Cleveland Clinic (Tr. 395-405, 457-605) and additional records from California. (Tr. 408-450)." (R. 19, PageID# 1283). Notably, Plaintiff does not offer any discussion or analysis as to how the more recent evidence documented any significant changes in Plaintiff's condition that would have rendered the State Agency consultants' opinions so unquestionably obsolete that the ALJ could not rely upon them. Plaintiff cites no authority for the proposition that an ALJ is barred from relying on State Agency physicians' opinions simply because some evidence is submitted after they rendered their opinions.

"There is no regulation or case law that requires the ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed. Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11cv828, 2013 WL 121813 at *6 (S.D.

Ohio Jan. 9, 2013), *report and recommendation adopted*, 2013 WL 1090303 (S.D. Ohio Mar. 15, 2013). While the court is aware of the decision in *Blakeley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407-409 (6th Cir. 2009), which held that an ALJ erred by failing to adequately explain the reasons for rejecting the opinions of three separate treating sources under the old rules in favor of earlier State Agency opinions, the Sixth Circuit has noted that parties have often "misconstrue[d] the Court's holding in *Blakeley v. Commissioner of Social Security* as providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record." *Kepke v. Comm'r of Soc. Sec.*, 636 Fed. App'x 625, 632 (6th Cir. 2016).

In sum, Plaintiff has not established that the ALJ violated 20 C.F.R. § 404.1520c in her consideration of the various medical opinions of record.

### 2. Credibility Assessment

In the second assignment of error, Plaintiff asserts the ALJ's credibility evaluation of Plaintiff's hearing testimony and Function Report was in violation of Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). (R. 17 at PageID# 1248-1251). Plaintiff does not develop any meaningful argument or identify how the ALJ allegedly failed to comport with requirements of SSR 16-3p. Instead, Plaintiff recounts her own testimony and her own statements submitted in a questionnaire and in a Function Report. (R. 17, PageID# 1249-50). Plaintiff does suggest that the ALJ did not discuss what activities she could perform, but rather than develop that argument, Plaintiff then further cites her subjective reports of pain made to medical providers.[6] (R. 17, PageID# 1249-1251).

---

[6] Plaintiff's statements, even if made to medical personnel, are not *per se* credible, nor are they transformed into "medical opinions" simply because a physician has recorded a patient's

A plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she or he believes should have been credited by the ALJ, as an ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). For example, "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some*

_____

statements in treatment notes. *See, e.g., Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011) (the physician's statement "is not a 'medical opinion' at all—it merely regurgitates [the patient's] self-described symptoms"); *accord Paddock v. Comm'r of Soc. Sec.*, No. 1:11-cv-7, 2012 WL 4356711 (W.D. Mich. Sept. 24, 2012); *see also Boughner v. Comm'r of Soc. Sec.*, No. 4:16-CV-1858, 2017 WL 2539839, at *8 (N.D. Ohio May 22, 2017), *report and recommendation adopted*, 2017 WL 2501073 (N.D. Ohio June 9, 2017) (finding that medical records containing observations recorded by a claimant's physician were likely statements made by plaintiff about his condition and not medical opinions as defined by the regulations); *Coleman v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-0179, 2016 WL 8257677, at *14 (N.D. Ohio Nov. 29, 2016), *report and recommendation adopted*, 2017 WL 633423 (N.D. Ohio Feb. 15, 2017) (finding that "office notes reflect plaintiff's own subjective statements regarding her condition" and, therefore, do not constitute "objective medical evidence"); *Rogers v. Astrue*, No. 11-cv-82, 2012 WL 639473, at *4 (E.D. Ky. Feb. 27, 2012) ("Simply recording Plaintiff's subjective complaints is not objective medical data therefore Dr. Lyons' clinical findings were insufficient to support a deferential review by the ALJ.")

other evidence for denying a claim for pain in addition to personal observation").

The Social Security Administration notes, "In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p. Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p, evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms…." 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied and stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 20).

After step one is satisfied, an ALJ—when considering the intensity, persistence, and limiting effects of an individual's symptoms—should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side

effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8. The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20).

While the decision could have benefited from a more unified analysis of Plaintiff's credibility symptoms, the court looks to the decision as a whole. First, it bears noting that the ALJ did not discount Plaintiff's claimed pain or hand limitations in their entirety, as she limited Plaintiff to sedentary work and also to only frequent use of her right upper extremity. (Tr. 19). The ALJ discussed Plaintiff's treatment, including medication, and noted Plaintiff was not taking any pain medication due to reported dizziness. (Tr. 20). The ALJ also discussed the inconsistency of some of these allegations with medical evidence of record and inconsistency with the results of a consultative examination, which showed no atrophy, good range of motion, normal grasp, manipulation, and fine coordination. *Id*. Further, the ALJ discussed other treatment such as Plaintiff's spine surgery that resulted in post-laminectomy pain syndrome, that made standing/walking more painful but was relieved by sitting. (Tr. 21). The ALJ noted that Plaintiff had never been prescribed an assistive device for ambulation, and that physical therapy notes show no plan or goal with respect to her hands. (Tr. 21).

When "remand would be an idle and useless formality[,]" courts are not required to "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon*

*Co.*, 394 U.S. 759, 766 n.6, 89 S. Ct. 1426, 22 L. Ed. 2d 709 (1969)) (further citation omitted); *accord Mischka v. Colvin*, No. 1:13-cv-1881, 2015 WL 778869, 2015 U.S. Dist. LEXIS 22054, at *14 (N.D. Ohio Feb. 24, 2015) (Lioi, J.). The ALJ engaged in a sufficient credibility analysis, and was not required to analyze all seven factors, but only those factors germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *see also Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination").

SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id.* at *8. Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court cannot find the ALJ's credibility analysis was deficient. Therefore, Plaintiff's second assignment of error is without merit.

### 3. Finding Regarding Past Relevant Work

In the final assignment of error, Plaintiff takes issue with the ALJ's finding at Step Four, but fails to develop a cohesive argument that furnishes a basis for remand. Rather, Plaintiff

asserts that if her testimony were fully credited, she would be unable to perform her past relevant work—an argument that rehashes the second assignment of error. (R. 17). In addition, Plaintiff points to numerous medical tests that, in Plaintiff's lay opinion, are incompatible with the job demands of the past relevant work as a computer systems hardware analyst. *Id*.

To the extent Plaintiff is asking the court to reweigh the medical evidence and testimony *de novo* and arrive at a new, more restrictive RFC determination that would negate Plaintiff's ability to perform her past relevant work, such an invitation exceeds the scope of this court's review. A claimant's RFC is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. §§ 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician."). The court can only review whether the ALJ's decision was supported by substantial evidence. The Sixth Circuit has explained,

> [The plaintiff] additionally argues that the ALJ's RFC determination was not supported by substantial evidence. "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). Substantial evidence in this context "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). This standard means that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In reviewing the ALJ's decision, we 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Finally, [the plaintiff] bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

*O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 416 (6th Cir. 2020). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009) (citations omitted). As discussed above, the RFC was supported by the opinions of the State Agency physicians, whose opinions the ALJ found partially persuasive.[7] (Tr. 22).

Finally, to the extent Plaintiff's third assignment of error asserts that she could not have performed her past relevant work as a computer systems hardware analyst if her RFC had been more restrictive and included limitations from medical sources that were discussed above, the court has already addressed those arguments above and found that the ALJ did not err in her consideration of the medical opinions of record. Thus, the ALJ was not required to incorporate rejected limitations it into the hypothetical posed to the VE. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (finding that, in fashioning a hypothetical question, the ALJ is required to incorporate only those limitations that he accepts as credible); *accord Williams v. Colvin*, No. 3:13CV1276, 2014 U.S. Dist. LEXIS 49782, at *56 (N.D. Ohio Mar. 19, 2014); *Mueller v. Colvin*, 2013 WL 4427450 at * 9 (N.D. Ohio Aug. 15, 2013).

Plaintiff's third assignment of error is without merit.

---

[7] The State Agency physicians actually opined that Plaintiff was less restricted than the ALJ, opining she could perform light exertional work. The ALJ assessed greater limitations and limited Plaintiff to sedentary exertional work. (Tr. 22). However, pursuant to the regulations, "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). Thus, while the ALJ did not find the State Agency opinions "fully persuasive," their opinions, nonetheless, support the ALJ's conclusion that Plaintiff could perform light exertional work. Significant to this case, their opinions also support the conclusion that Plaintiff could frequently handle and finger with the right upper extremity. (Tr. 88, 99-100).

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: March 29, 2022